[S. F. No. 15835. In Bank.—March 22, 1939.]

In the Matter of CHARLES JOE JUNG, a Member of The State Bar.

Philbrick McCoy for Petitioner.

Charles Joe Jung, *in pro. per.*, and I. M. Peckham for Respondent.

THE COURT.—On this rehearing, we adopt the following statement of the facts from our former opinion:

"This proceeding was instituted by The State Bar to revoke the license of the respondent Charles Joe Jung to practice law in all the courts of this state on the ground that it was obtained through misrepresentation and concealment in that respondent made false answers to several material questions in his sworn application for admission to practice. Respondent was thereupon directed to show cause before this court why the order admitting him to practice law should not be revoked. Thereafter he demurred and answered and the matter was referred to a referee to receive evidence, make findings and file a report. Both sides have filed exceptions to the referee's findings and report and the matter now comes before us on the evidence adduced before the referee and the briefs of the parties.

"It appears that in June, 1936, the respondent filed with the committee of bar examiners his sworn application in writing to take the examination for admission to the bar of this state. Subsequently, he passed the examination and, upon motion of the committee, was admitted -to the practice of the law by this court on October 21, 1936. In its petition herein to revoke the order so admitting him to practice, The State Bar alleges that respondent by making false answers to certain questions in his sworn application for admission misrepresented certain matters and concealed certain facts material to a proper determination of his moral character.

"Specifically, it is charged that in answering question 14 relative to his previous business or occupation, respondent said that he had been employed as an interpreter in the United States immigration service and then, as reason for the termination of the employment, stated '(4) (Non-civil service, Political Appointment) Position discontinued in March, 1933.' In question 16 respondent was asked: 'Have you ever been reprimanded, censured, or otherwise disciplined as an attorney or member of any profession or organization, or holder of any office, or have any charges ever been made or filed or proceedings instituted against you?' Respondent's answer thereto was 'No.' In reply to question 17 as to whether he had 'ever been charged with fraud, either formally or informally', respondent likewise answered 'No.'

"In effect, it is The State Bar's theory that respondent's answers to said three questions were false in that he deliberately withheld information relative to his dismissal 'with

prejudice' by the immigration department following an investigation of a complaint received by that department having to do with asserted misconduct on his part as an interpreter. A reading of the transcript herein discloses that on November 28, 1932, the central immigration office in Washington requested the San Francisco office, where respondent was employed, to investigate a complaint from the Florida office apparently charging respondent with having taken money to effect the entry of an alien Chinese. Accordingly, an investigation was first made at Jacksonville, Florida, the source of the complaint and the location of the informer. When that investigation was completed to the satisfaction of the officer in charge, respondent was directed by said officer to report at the Angel Island station. The officer testified in this proceeding that he thereupon informed respondent that 'he was charged with certain derelictions and malfeasance in office', that respondent was given 'specifications of the elements of malfeasance with which he was charged'; that respondent was then sworn and under oath made a statement denying the charges against him, stating, in substance, that 'from what had transpired it was his understanding he was under charges by a certain individual for taking money in order to effect the admission of an alien Chinese. He disclaimed all knowledge concerning the matter; disclaimed all activities in connection therewith; referred to his previous record and asserted that the charges were not true, and said that from the evidence, so far as he knew, there was no cause why he should be discharged from his position. He stated that the statements which he had made were all under oath, and that he fully understood the position which existed at that time. This statement that Mr. Jung understood his answers were made under oath was in addition to his being sworn. He was sworn before the statement was commenced. That was the material part of his comment.'

''The record also discloses that less than three months after the commencement of this investigation, respondent was informed by letter from the local office and by a second letter from the department of labor in Washington of the termination of his employment, the latter letter stating that 'upon the recommendation of the Commissioner-General of Immigration, your services as Chinese interpreter . . . have been discontinued with prejudice. . . . ' ''

■ The referee found, with respect to the material issues herein, that respondent made no false statements, but acted in good faith in the answer given to the question asked; that he did not know the exact meaning of the statement that his services had been discontinued "with prejudice", and was not expressly advised of the reason for the dismissal; that it was not clearly shown to what extent he knew of the nature or extent of the investigation; and that the testimony of the witnesses for The State Bar was "inconclusive and unsatisfactory". His explanation of his understanding of the dismissal, which the referee found acceptable, was that he was appointed to his position by a commissioner who was himself a political appointee, holding at the will of the appointing power; that the commissioner died in December, 1932, or January, 1933, and he assumed that his dismissal followed naturally upon the termination of the political appointment of his superior.

The conclusion of the referee, that respondent did not wilfully or knowingly conceal any material facts in his application or make any false answers to questions therein, appears to us to be a reasonable one in the light of all the evidence in the record.

It is therefore ordered that the proceeding against petitioner be dismissed.

EDMONDS, J., Dissenting.—I dissent. In July, 1938, this court decided that the charges made by The State Bar against the respondent had been fully sustained and warrant a revocation of his license to practice law in this state. Thereafter a petition for rehearing was granted. Upon the same evidence which was before the court when the first decision was reached, a majority of the justices now determine that the conclusion of the referee is "a reasonable one".

I adhere to the views first expressed. In my judgment, the record clearly shows that while the respondent was in government service as an interpreter, a complaint was made against his conduct; that thereafter an investigation was made which included a statement taken from him concerning the pending charges, of which he was fully informed; and that thereafter he was dismissed from the service "with prejudice". It strains ordinary credulity to believe, as found by the referee, that the respondent, with sufficient legal education to pass

the bar examination, did not know the meaning of the words "with prejudice" or understand that his dismissal, which followed the investigation of his official conduct by less than three months, had no connection with it.

The State Bar Act (Stats. 1927, p. 38, as amended; Deering's Gen. Laws, 1937 ed., Act 591), prescribes as a qualification for admission to practice law, that a person must be "of good moral character". (Sec. 24.2) The examiners, whose duty it is "to administer the requirements for admission to practice and to certify to the Supreme Court for admission those applicants who fulfill the requirements" therefor (sec. 24), have a right to know the circumstances which necessarily influence a determination as to whether a person is of the character required by the statute. For the purpose of securing information, upon which to determine the eligibility of applicants, each is asked certain questions. One who under oath falsely answers such inquiries is not a person qualified by either the specific terms of the State Bar Act, *supra,* or the principles of common honesty to engage in the practice of law.

In my judgment, the only conclusion which can reasonably be drawn from the record before this court is that the respondent made false representations in connection with his application to take the examination for admission to the bar, and that in view of such conduct his license to practice law should be revoked.

Waste, C. J., concurred.