[Civ. No. 30842.    Second Dist., Div. One.    Sept. 28, 1967.]

WILLIS BALDWIN RICHARDS, Plaintiff and Respondent, v. MILTON G. GORDON, as Real Estate Commissioner, etc., Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Robert M. Snader, Deputy Attorney General, for Defendant and Appellant.

Edward L. Lascher for Plaintiff and Respondent.

LILLIE, J.—In September of 1965 appellant commissioner filed an accusation against respondent which alleged that he was subject to disciplinary action under section 10177.5, Business and Professions Code, by reason of a final judgment in a civil action entitled Watts, et al. v. Spector, et al., ordering rescission of a certain contract for the exchange of real properties upon the ground of respondent's fraud and misrepresentation.[1] Upon the hearing evidence was excluded which assertedly would have impeached the prior finding that respondent at the times in question had engaged in fraud or deceit; instead he was limited to a showing of rehabilitation or mitigation. Respondent's license having been ordered revoked, he instituted a mandamus proceeding in the superior court to set aside such order (Gov. Code, § 11523). An alternative writ was issued, and appellant by way of return filed an answer to the petition for the writ. After a hearing but with no evidence other than the transcript of the administrative proceeding, the court made findings in favor of respondent, ordered appellant to vacate his order revoking respondent's license and, "if so advised, [to] take such further action as is specially enjoined upon by law in the light of the Court's Opinion and Judgment." The court was of the opinion, among other things, that section 10177.5, Business and Professions Code, *supra,* did not make the final judgment in the Watts case conclusive evidence that fraud had there and then been committed by respondent-licensee; to the contrary, such statute only established the prima facie existence of the acts complained of, and it was the duty of appellant to consider the facts accompanying the transaction in order that he might properly exercise the discretion resposed in him with respect to the penalty, if any, to be imposed in the disciplinary proceeding. From the judgment directing the issuance of the peremptory writ the commissioner has appealed;[2] his purported appeals from certain non-appealable orders, including order denying his motion for a new trial, are dismissed.

[1]Said section provides that "When a final judgment is obtained in a civil action against any real estate licensee upon ground of fraud, misrepresentation, or deceit with reference to any transaction for which a license is required under this division, the commissioner may, after hearing in accordance with the provisions of this part relating to hearings, suspend or revoke the license of such real estate licensee."

[2]Contending that notice thereof was not timely filed, respondent has moved to dismiss the appeal from the judgment. For valid reasons, including the well established policy mentioned in *Slawinski* v. *Mocettini,* 63 Cal.2d 70 [45 Cal.Rptr. 15, 403 P.2d 143], such motion will be denied.

To a very great extent the determination below rested upon the decision of this court in *Denny* v. *Watson,* 114 Cal.App.2d 491 [250 P.2d 692], which upheld the constitutionality of the statute here under consideration (§ 10177.5) ; and both sides rely on certain broad pronouncements of the court with respect thereto. In concluding that the legislation was free from the infirmities urged by the licensees, the court declared in *Denny* that the statute ''does not, *ipso facto,* require suspension or revocation of a real estate broker's license. It makes a judgment for fraud in a civil case prima facie evidence, upon which the Real Estate Commissioner may suspend or revoke the license.

''A hearing is required. Licensees under attack may appear and defend themselves. And the commissioner in his discretion may continue, or suspend, or revoke licenses.'' (P. 494.) The language above quoted is, of course, most helpful to respondent's position at bar; but the opinion continues in a vein less supportive of his argument: ''As the attorney general argues, the section commends itself from a practical, commonsense viewpoint. It saves duplication of proof,—first, the hearing in court, and then, the commissioner's hearing.'' Continuing, ''In this case petitioners had their day in court. They were represented by counsel. The issue of their fraud was heard and determined in that tribunal. This court perceives no good reason why it would be a denial of due process of law to have the evidence in fraud actions against real estate brokers in the superior court taken all over again in commissioner's hearings to revoke or suspend their licenses.'' (P. 494.) Factually, however, the two situations are distinguishable; in *Denny,* as the opinion observes, the licensees ''again had their day on the commissioner's hearing,'' and without benefit of counsel gave testimony which, it was noted, lent additional support to the order of revocation, whereas in the present case evidence was offered and excluded by the hearing officer upon the grounds hereinabove stated.

■ According to appellant, in the present proceeding the evidence offered was properly excluded under the doctrine of res judicata which collaterally estops the impeachment of the prior judgment here attempted. Such doctrine has been held applicable in disciplinary proceedings (*Contractors' State License Board* v. *Superior Court.* 187 Cal.App.2d 557, 562 [10 Cal.Rptr. 95] ) if the pertinent three questions posed in *Bernhard* v. *Bank of America,* 19 Cal.2d 807 [122 P.2d 892], must be answered in the affirmative: ''Was the issue decided in the

prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?'' (P. 813.) We need only concern ourselves with the first of the above questions since there is no dispute that as to the last two, the answer is in the affirmative. In *Bernhard* it is stated that the subject exclusionary rule ''is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy.'' (P. 811.) That the issues decided in the prior superior court case were identical with those litigated here seems clear from the nature of the offers of proof and the general line of inquiry pursued by respondent at the hearing; they are summarized and discussed in his supplement to the petition for the writ, further reference thereto being made in a certain ''Specification of Rulings Wrongfully Made.''

First, respondent sought to show the previous experience of Mr. Watts in real estate dealings, as well as his education and ability to understand documents including the document he actually signed. Implicit in such proposed interrogation is the absence of Mr. Watts' reliance on respondent's representations or statements. As will hereinafter appear, the fraud here involved was not limited to a representation negligently made; it was actionable fraud, consisting of respondent's failure to disclose a secret agreement by his firm to buy Watts' property. In order to establish a cause of action for fraud, plaintiff in the prior action necessarily had to show reliance by him upon respondent's compliance with the fiduciary duties arising from their relationship. (*Adams* v. *Herman*, 106 Cal.App.2d 92 [234 P.2d 695].) The fact of such reliance was determined by the judgment of the trial court in the prior proceeding which decreed rescission of the contract in question; nothing of a mitigating nature could be gleaned from the proposed inquiry. On somewhat similar facts we affirmed a judgment of rescission in *Slusher* v. *Buckley*, 174 Cal.App.2d 324 [344 P.2d 905]; the rules there discussed are applicable here.

Next, it is contended that the hearing officer erred in refusing to allow evidence that respondent had waived his right to a commssion, amounting to $3,675, which assertedly ''was mitigating evidence and relevant to the degree of discipline to be imposed, if any.'' The claimed waiver is directly contrary to a finding in the prior action to the effect that by reason of

respondent's duplicity he had "forfeited his right to any compensation for services rendered by him as a broker for plaintiff, and there is no consideration for plaintiff's promise to pay said defendant, RICHARDS, a real estate broker's commission of $3675.00, or any sum or amount at all, as alleged in said defendant's counterclaim."

Another specification of error complains that after the agreement had been signed and the escrow opened, respondent helped out Mr. Watts by offering to buy his 9-unit apartment house. This likewise is contrary to a finding in the prior action that respondent had entered into a secret agreement whereby respondent's firm would acquire the above apartment building.

Respondent also sought to show that he had not misrepresented the annual vacancy factor in the 18-unit apartment building to be exchanged for Mr. Watts' property; such proffered evidence was properly excluded in view of an express prior finding specifically to the contrary.

Still other offers of proof were based on the same erroneous premises, only one of which need be mentioned. It was alleged that the trial judge in Watts et al. v. Spector, et al. was of advanced years and had difficulty remembering the facts from day to day; although certain evidence favorable to respondent was brought to the judge's attention, which he finally recalled, it was not reflected in the findings actually signed. Such criticism of the conduct of the trial properly might have been presented on a motion for new trial or by appeal (although apparently neither course was taken), but it has no place in a proceeding of this kind.

While the exclusion of the above evidence is compatible with the rule of collateral estoppel which, in turn becomes operative under the doctrine of res judicata, our determination in such regard does not mean that respondent, or any other licensee, is powerless to defend himself against an accusation based upon the subject statute (§ 10177.5). Indeed respondent at the administrative hearing conceded that he was not attempting to retry the civil case or to impeach the prior judgment therein reached; such concession has provoked the further contention by the Attorney General that respondent has waived his right to a contrary assertion in the mandate action. *Bohn* v. *Watson*, 130 Cal.App.2d 24, 37 [278 P.2d 454].) ■ Respondent, it seems to us, is in somewhat the same position as an attorney confronted with charges filed by an administrative committee of the State Bar; in such

proceedings mitigating circumstances will be taken into consideration in determining the penalty. Recognized as a fact in mitigation is the absence of intentional wrongdoing. (*Lowe* v. *State Bar*, 40 Cal.2d 564 [254 P.2d 506].) In this regard one of the complaints made by respondent is that the hearing officer invited him to testify that he felt he had committed no wrong; he contends that he should not be penalized for failing to do so because he had been advised by counsel that even innocent or negligent representations might warrant the rescission of a contract on the ground of fraud. The invitation of the hearing officer, characterized as "almost as if a trap had been laid," was not improper nor was it irrelevant to the inquiry before him. The hearing was convened to ascertain, as the statute provides, whether respondent's license should be suspended, revoked or continued. If respondent was given the wrong advice, he cannot now complain that he has been prejudiced.

The trial court's erroneous approach to the problem at bar is made further apparent by an examination of the express language of section 10177.5 which makes the judgment itself the operative fact upon which disciplinary action is imposed; irrelevant, therefore, are the acts or omissions of the licensee which led to the judgment. If the administrative proceeding had been initiated pursuant to section 10176, Business and Professions Code, respondent's present claims would be possessed of validity. This latter statute makes a real estate broker's license subject to suspension or revocation upon proof of the broker's fraud, misrepresentation or deceit; the commissioner availed himself of this statute in *Buckley* v. *Savage*, 184 Cal.App.2d 18 [7 Cal.Rptr. 328], and this court found that the decision of the commissioner was properly sustained by the superior court exercising its independent judgment on the facts. In this connection, as pointed out by the Attorney General, section 10176 was enacted in 1919, some 25 years prior to the enactment of section 10177.5 in 1945; we have the right to assume, therefore, that there was a legislative intent to change existing law as it pertained to the specific problem with which we are here confronted. (See *Union League Club* v. *Johnson*, 18 Cal.2d 275, 278 [115 P.2d 425].) Too, any construction of a statute leading to absurd consequences is to be avoided, and such would be the result if a de novo hearing were compelled with the accompanying necessity of attendance by all witnesses to a prior superior court proceeding which had determined all the material facts in controversy.

■ We are aware, of course, that in a license-revocation proceeding before the Real Estate Commissioner the superior court is entitled to exercise its independent judgment on the evidence, the governing rule being the same as that applied in *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689], and countless cases thereafter. (See *Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301, 308 [196 P.2d 20].) But respondent, while contending for the application here of such rule, concedes that an appellate court can reverse if there has been an error of law, prejudice or a miscarriage of justice. In our opinion, as stated above, the trial court erred in finding that respondent was not collaterally estopped from impeaching the rior findings and judgment that fraud and deceit had been perpetrated by him in the Watts transaction. It is not the insufficiency of the findings, as such, to support the determination below that is here challenged; rather, it is correctly contended that such findings are based on erroneous premises. Hence, the "substantial evidence rule" dictating the result in the *Moran* case does not apply.

■ Not without merit is appellant's additional criticism that the trial court failed to make specific findings as requested; in this connection, it appears that appellant not only objected to the findings as drawn but also requested special findings on all thirteen specifications raised by respondent's pleadings. The problem may, or may not, arise upon retrial; if so, there should be some specificity to the findings, pro or con, eventually rendered.

■ As noted at the outset, the judgment appealed from directs appellant to consider the facts and circumstances preceding, accompanying and following the transaction embraced by the Watts judgment, declaring that neither res judicata nor collateral estoppel is involved or applicable. Unless such inquiry is limited to the mitigating circumstances, if any, involved in the above transaction, any offer of proof in impeachment of the prior judgment should be rejected. " 'Mitigatng [*sic*] circumstances are such as do not constitute a justification or excuse of the offense in question, but which in fairness and mercy may be considered as extenuating or reducing the degree of moral culpability.' " (*People* v. *Leong Fook*, 206 Cal. 64, 68 [273 P. 779].) The commissioner, in the exercise of a broad discretion, can be guided by the above accepted definition; further guidelines are the absence of intentional wrongdoing and, as stated in *Backman* v. *State of California*, 167 Cal.App.2d 82 [333 P.2d 830], "In determin-

ing whether there is ground for disciplinary action, the matter of *good faith is important.*" (P. 92.)

The motion to dismiss the appeal from the judgment is denied, and such judgment is reversed for further proceedings not inconsistent with the views hereinabove expressed; the purported appeals from all nonappealable orders are dismissed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied October 20, 1967.